## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LISA ALLEN,

      Plaintiff,                   Case No

v.                                   Hon.

HENRY FORD HEALTH SYSTEM,

      Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, Michigan 48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

## **COMPLAINT AND JURY DEMAND**

Plaintiff Lisa Allen ("Plaintiff"), by and through her attorneys, HURWITZ

LAW PLLC, states the following for her Complaint and Jury Demand against

Defendant Henry Ford Health System ("Defendant"):

## INTRODUCTION

1.     Plaintiff Lisa Allen was a Registered Nurse for Defendant.  Plaintiff submitted a religious accommodation request on or about July 31, 2021 to which Defendant responded by terminating her on October 3, 2021 after temporarily placing her on an involuntary unpaid leave of absence.

2.     There is no pandemic exception to the protections afforded by Title VII of the Civil Rights Act of 1964 ("Title VII").  Defendant clearly did not understand this when it terminated Plaintiff in retaliation for requesting a religious accommodation to the COVID-19 vaccine.  Instead of engaging with Plaintiff in the spirit of "bilateral cooperation," Defendant imposed a "no accommodation" vaccine mandate that evaded the interactive accommodation process required by law.

3.     The value of religious freedom has been "zealously protected, sometimes even at the expense of other interests of admittedly high social importance."  *Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972).

## PARTIES AND JURISDICTION

4.     Plaintiff is an individual residing in Waterford, Michigan, which is located in Oakland County.

5.     Defendant Henry Ford Health System is a Michigan domestic nonprofit corporation with its principal place of business in Detroit, Michigan.  Defendant

regularly operates various hospitals in the State of Michigan.  Defendant is located within this judicial district.

6.     Plaintiff's claims arise out of Defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

7.     This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

8.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the events giving rise to Plaintiff's claims took place and where Defendant regularly conducts business.

9.     Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging religious discrimination and retaliation on October 16, 2021.

10.     Plaintiff received her Right to Sue letter from the EEOC on February 22, 2022.

## FACTUAL ALLEGATIONS

### COVID-19 and Defendant's Vaccine Mandate

1.     By Spring 2020, the SARS-CoV2 ("COVID-19") virus had spread to many nations, including the United States.

2.     In that timeframe, Defendant began implementing certain mitigation procedures for its workforce, such as wearing masks or other Personal Protective

Equipment ("PPE"), maintaining minimum distances from other workers, and receiving body temperature checks.   In addition, Defendant increased the cleaning and sanitation of its facilities.

3.      Defendant's hospital services never ceased during the COVID-19 pandemic.

4.      Defendant's employees were required to go into hospitals and facilities regardless of vaccination status while donning PPE.  This includes COVID-19 and Oncology units.

5.      Defendant's employees were required to perform clinical work even when they tested positive for COVID-19.

6.      On or about June 29, 2021, Defendant announced its Mandatory Vaccines Policy (the "Vaccine Mandate").

7.      All employees, volunteers, students, and contractors were required to be vaccinated for COVID-19 by September 10, 2021.

8.      Defendant does not require patients who require treatment at Defendant's hospitals to be vaccinated, even though these individuals interact with Defendant's staff.

9.      Defendant does not require vendors who visit hospital premises to be vaccinated, even though these vendors interact with Defendant's staff.

10.     Defendant elicited accommodation requests, and the last day to submit applications for religious or medical exemptions was August 10, 2021.

11.     At the time, The U.S. Food and Drug Administration ("FDA") had not approved any of the three available vaccines (Pfizer-BioNTech, Moderna, and Johnson & Johnson's Janssen) under Emergency Use Authorization ("EUA").

12.     The Pfizer-BioNTech vaccine was approved by the FDA on August 23, 2021—days after the deadline to submit religious or medical accommodations to the Vaccine Mandate.  Press Release, *FDA Approves First COVID-29 Vaccine*, U.S. FOOD & DRUG ADMIN. (Aug. 23, 2021).

13.     The Moderna vaccine was approved by the FDA on January 31, 2022. Press Release, *Coronavirus (COVID-19) Update: FDA Takes Key Action by Approving Second COVID-19 Vaccine*, U.S. FOOD & DRUG ADMIN. (Jan. 31, 2021).

14.     Johnson & Johnson's Janssen COVID-19 vaccine remains unapproved by the FDA.

15.     Accordingly, Defendant's Vaccine Mandate forced employees to receive a vaccine that was not approved by the FDA.

16.     Defendant set forth several "Compliance Deadlines" for those effected by Defendant's Vaccine Mandate.

17.   The last day to receive the first dose of the Moderna vaccine was August 13, 2021.

18.   The last day to receive the first dose of the Pfizer vaccine was August 20, 2021.

19.   The final day to receive the second dose of the Pfizer or Moderna vaccine, or single dose of the Johnson & Johnson's Janssen vaccine was September 10, 2021.

20.   Defendant's management dictated that employees who did not comply with the Vaccine Mandate within the stated timeframe will be suspended without pay, and given until October 1, 2021, to receive the COVID-19 vaccine.

21.   Employees who remained unvaccinated from COVID-19 after October 1, 2021 were terminated.

22.   Defendant's requirement was absolute; it offered no alternative, such as for periodic testing, mask wearing, social distancing, etc., even for employees who have already had COVID-19 and still possess natural immunity from the disease.

23.   Employees must choose vaccination or termination.   "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most

profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices." *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

24.    Employees were obligated to submit proof of vaccination by uploading a vaccine card to ehs@hfhs.org or by bringing the vaccination card to any employee Health Services location.

25.    Defendant instructed, "If you are unable to receive the vaccine for medical or religious reasons, please visit the COVID-19 vaccine webpage on OneHENRY to complete the appropriate exemption form."

26.    Defendant's exemption form asked four questions:

> (1)    Have you ever been exempted form getting a vaccine for religious/spiritual reasons?

> (2)    Have you been given any vaccines within the past year?  If yes, indicate the name(s) of the vaccine(s).

> (3)    Have your religious/spiritual beliefs changed in the last year?  If yes, please give a brief description.

> (4)    Please explain why you are seeking a religious/spiritual exemption.  You may be asked to talk about the nature of your beliefs.

27.    Defendant's exemption form also contained a section for an applicant's religious/spiritual leader to complete, wherein the leader of the religious organization was obligated to sign a statement stating, "My signature below as the

leader of this Religious Organization confirms that our religious beliefs say that <u>all</u> vaccines are against our religious teachings."

## Plaintiff's Employment and Religious Accommodation Request

28.   Plaintiff has served her community as a Registered Nurse for 23 years.

29.   Plaintiff began working for Defendant on a contingent schedule in or about January 2018.

30.   In addition to working for Defendant, Plaintiff also performed services as a Registered Nurse for Ascension Health Alliance.

31.   Plaintiff submitted a religious accommodation request to Ascension Health Alliance ("Ascension") pursuant to its COVID-19 vaccine mandate and Ascension accepted her religious accommodation request.

32.   Pursuant to Defendant's Vaccine Mandate, Plaintiff submitted her religious accommodation request before the required date of September 10, 2021.

33.   On July 31, 2021, Plaintiff submitted her religious exemption.

34.   Plaintiff's exemption request included a supplemental document espousing her sincerely held *bona fide* religious beliefs, wherein she included scripture and anecdotal illustrations of her sincerely held religious beliefs precluding her form being vaccinated.  Plaintiff wrote:

> It is my religious belief that God made us with absolute perfection in His likeness and holiness.  Genesis 1:27 "God created us in his own image."

God filled us with the blessed Holy Spirit which gave us life.  My beliefs are that the Holy Spirit protects, heals, and sustains us throughout our lives as we manage this sacred temple and these precious gifts he so graciously bestowed upon us.  Corinthians 6:19 "Do you not know that your body is a temple of the Holy Spirit, who is in you, whom you have received from God?  You are not your own.  That God is in you that He is our healer."

The gospel of God is clear to me.  He has made me in his perfect image.  I will continue to leave my faith in God's hands, not man's, and trust that he will continue to provide for me my health, He will continue to protect me, and He will keep me safe from all harm.  Hebrews 11:1 "Now faith is the substance of things hoped for, the evidence of things not seen."  Psalm 118:8 "It is better to take refuge in the Lord than to trust in man."  Psalm 94:22 "But the Lord is my refuse; my God is the rock of my protection."

Vaccines violate my deeply rooted religious and spiritual beliefs; beliefs that are protected by federal law under my first amendment rights.  I respectfully request that you honor my religious freedom rights and accept this exemption into my permanent health file.

35.    Plaintiff seeks to make daily decisions, including those regarding vaccination and other medical decisions, through prayer and by reading the Bible.

36.    These sincerely held and prayerfully developed religious beliefs preclude Plaintiff from taking the COVID-19 vaccine.

37.    The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious

accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business").

38.    "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process — a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

39.    Following the submission of Plaintiff's accommodation request, Plaintiff received a phone call from Defendant's Human Resources Department, whereupon Plaintiff was asked to participate in an interview regarding her exemption request.

40.    Plaintiff agreed to participate, however, she requested the questions of the interview in advance.

41.    Defendant's Human Resources never contacted Plaintiff again.

42.    Defendant did not request nor suggest that Plaintiff participate in any discussion to determine a fair and legal accommodation.

43.    Defendant never engaged in the interactive process.

44.    Instead, Defendant sabotaged the interactive process and evaded any sort of bilateral cooperation.

45.     Plaintiff suffered extreme emotional distress while waiting and watching for approval of her application for religious exemption and accommodation while other employees around her were being approved.

46.     On August 18, 2021, Defendant sent Plaintiff her "Religious/Spiritual Exemption Determination" letter via an email from Defendant's Employee Health Services.

47.     Defendant denied Plaintiff's request by merely stating, "Your request has been reviewed by a committee and the following determination was made: Exemption Denied."

48.     Defendant failed to explain why Plaintiff's accommodation request was denied.

49.     Defendant similarly failed to identify which of Defendant's personnel made up the "committee" that denied Plaintiff's accommodation request.

50.     Defendant has no "satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

51.     Plaintiff could have followed existing COVID-19 protocols at the hospital.

52.     Plaintiff could have tested for COVID-19 daily to confirm that she was not ill.

53.     Plaintiff attempted to engage in an interactive process with Defendant in order to explore these options.  She was denied any sort of bilateral compromise.

54.     mask wearing, testing, social distancing, virtual meetings, remote work, etc.) were not reasonable, Defendant refused to engage and merely responded in conclusory fashion that, "All determinations are final."

55.     To add insult on top of Plaintiff's injury, she learned that her similarly situated colleague was granted a religious exemption to the COVID-19 vaccine.

56.     Upon information and belief, Plaintiff's similarly situated colleague is not required to undergo weekly testing as a reasonable accommodation—something Plaintiff was willing to do.

57.     Upon information and belief, individuals with approved vaccine accommodations are merely required to wear PPE as an accommodation.

58.     Defendant's religious animus is further demonstrated by the fact that Defendant provided medical exemptions to employees who submitted requests for medical accommodations.

59.     Defendant did not explain to Plaintiff why some employees were accommodated while others were denied accommodation without bilateral cooperation or an interactive process.

60.     On September 17, 2021, Defendant placed Plaintiff on an unpaid suspension for the remainder of her employment.

61.     With no criteria to form a basis of denial, Defendant effectively challenged Plaintiff's spirituality.

62.     The sincerity of Plaintiff's religious beliefs is not open to question.  *See Equal emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 471 F. Supp. 3d 684, 699 (M.D. Tenn. 2020); *citing United States v Seeger*, 380 U.S. 163, 185 (1965) ("[T]he truth of a belief is not open to question).

63.     Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j); *see also* 29 C.F.R. § 1605.1 ("In most cases whether or not a practice or belief is religious is not at issue… [R]eligious practices… include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.").

64.     An individual's testimony about his or her belief "must be given great weight" and is enough to show she has a *bona fide* religious belief.  *See e.g.*, *Seeger*, 380 U.S. at 184 (1965) (When dealing "with the beliefs of different individuals who will articulate them in a multitude of ways… the claim of the [party] that his [or her] belief is an essential part of a religious faith must be given great weight).

65.     Moreover, "[a]s long as a party's beliefs are religiously asserted, it is not for the courts to challenge the truthfulness of such assertions simply because they developed 'from revelation, study, upbringing, gradual evolution, or some

source that appears entirely incomprehensible." *E.E.O.C. v. Alliant Techsystems, Inc.*, No. CIV.A. 98-0084-R, 1998 WL 777015, at *6 (W.D. Va. Sept. 18, 1998) (*quoting Hobbie v. Unemployment Comm'n of Fla.*, 480 U.S. 136, 144 n. 9 (1987)).

66.    There is no factual predicate in the record to suggest that Plaintiff lacked credibility.

67.    Defendant has not suggested any facts that undermine Plaintiff's credibility.

68.    Plaintiff's religious conviction is highlighted by the fact she remained unvaccinated in the face of inevitable termination—losing her livelihood in the process.

69.    On October 3, 2021, Defendant terminated Plaintiff.

**Defendant Violated EEOC Guidance**

70.    On March 1, 2021, the EEOC expanded its guidance on religious exemption to employer vaccine mandates under Title VII of the Civil Rights Act of 1964 ("Guidance").  This Guidance describes in greater detail the framework under which the EEOC advises employers to resolve religious accommodation requests. *See* Guidance, *supra*.

71.    The EEOC emphasizes that as a reasonable accommodation, an unvaccinated employee entering into the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get

periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment. *Id*. at K.2.

72. The EEOC states that an employer cannot rely on speculative hardships when face with an employee's religious objection but, rather, should rely on objective information. *Id*. at L.3.

73. The EEOC states that, in many circumstances, it may be possible to accommodate those seeking reasonable accommodations for their religious beliefs, practices, or observances without imposing an undue hardship. *Id*. at K.12.

74. The EEOC instructs, "[i]f the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. at L.5.

75. "[T]he definition of religion is broad and protects, beliefs, practices, and observances with which the employer may be unfamiliar." *Id*. at K.12.

76. "The definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs, practices, or observances, including those that may be unfamiliar to employers." *Id*. at L.2.

77. "The employer should ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." *Id*. at K.12.

78.    "Employers should evaluate religious objections on an individual basis." *Id*. at L.2.

79.    The EEOC states:

An individual's beliefs – or degree of adherence – may change over time and, therefore, an employee's newly adopted or inconsistently observed practices may nevertheless be sincerely held. An employer should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenants of the employee's religion, or because the employee adheres to some common practices but not others. *Id*. at L.2.

80.    "An employer should thoroughly consider all possible reasonable accommodations." *Id*. at K.12.

81.    The EEOC states that factors which could "undermine an employee's credibility include" the following:

a.    whether the employee has acted in a manner inconsistent with the professed belief (although employees need not be scrupulous in their observance);

b.    whether the accommodation sought is a particularly desirable benefit that is likely to be sought for nonreligious reasons;

c.    whether the timing of the request renders it suspect (for example, it follows an earlier request by the employee for the same benefit for secular reasons); and

       d.     whether the employer otherwise has reason to believe the accommodation is not sought for religious reasons.

*Id.* at K.12.

82.    In most circumstances, it is possible to accommodate religious beliefs "without imposing an undue hardship." *Id.* at L.3.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

83.    Pursuant to Title VII, the prohibition against religious discrimination imposes an affirmative duty on employers to reasonably accommodate the religious observances and practices of its employees, unless the employer can demonstrate that such an accommodation would cause undue hardship to the conduct of its business. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

84.    "The obligation to provide religious accommodations absent undue hardship is a continuing obligation that allows for changing circumstances." Guidance at L.6.

85.    Defendant bears the burden to show "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978); *see also Baz v. Walters*, 782 F.2d 701, 706 (7th Cir.1986); *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir.1978); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir.1989).

86.     In the instant case, Defendant cannot show undue hardship.  To date, Defendant has not stated what its criteria is for granting religious accommodations to its Vaccine Mandate.

87.     Defendant did not explain how Plaintiff's requested religious accommodation to its Vaccine Mandate posed any undue hardship.

88.     An employer does not satisfy its burden "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co*., 527 F.2d 515, 520 (6th Cir.1975).

89.     Without a proffered explanation as to why Defendant would endure undue hardship to accommodate Plaintiff individually, Defendant relies on hypothetical hardships by default.

90.     "A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of actual imposition on co-workers or disruption of the work routine." *Townley Eng'g & Mfg. Co*., 859 F.2d at 615 (9th Cir. 1988).

91.     "An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection but, rather, should rely on objective information."  EEOC Guidance at L.3.

92.     Here, Defendant accommodates other employees who submitted religious accommodation exemptions and did not endure undue hardship.

93.     Defendant cannot claim undue hardship when other employees in similarly situated positions (i.e., Registered Nurse) were granted religious accommodations.

**COUNT I**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.**
**Religious discrimination – Failure to accommodate**

94.     Plaintiff restates the foregoing paragraphs as set forth fully herein.

95.     At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

96.     Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq*., makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

97.     Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

98.     This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

99.     After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

100.   The employer must act in "good faith," *Id*., and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982)

101.   Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

102.   Plaintiff holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine.

103.   Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.

104.   Defendant refused to engage in the interactive process with Plaintiff regarding her religious accommodation requests.

105.   Under Title VII, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which she informed the [Defendant]; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

106.   Multiple accommodations could have been offered to Plaintiff.  They include mask wearing and periodic testing for COVID-19—the very same

accommodations being offered to virtually every public and private employee in the State of Michigan.

107. A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

108. Defendant would not suffer undue hardship by granting Plaintiff an accommodation. 42 U.S.C. § 2000e(j).

109. The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship. *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

110. Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

111.   Irrespective of the interactive process, Defendant failed to provide Plaintiff with reasonable accommodations for her religious beliefs.

112.   As a result, Plaintiff was not informed (a) what about her accommodation request posed an undue hardship; and (b) why she could not be accommodated.

113.   Defendant thereby discriminated against Plaintiff because of her religious beliefs.

114.   Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

115.   As a direct and proximate result of Defendant's violation of Title VII Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

116.   As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

117.   By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

### COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### Religious discrimination –retaliation

118.   Plaintiff restates the foregoing paragraphs as set forth fully herein.

119.   At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

120.   Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

121.   Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's... religion; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive

any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individuals... religion[.]"

122. Defendant's mandatory vaccination policy evades any sort of bilateral cooperation or interactive process.

123. Simply by failing to engage with Plaintiff as to the possible reasonable accommodations, Defendant has violated the law.

124. Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's vaccine mandate.

125. Defendant responded almost immediately by announcing that it would effectively terminate her employment.

126. This occurred even though Defendant granted other the religious accommodation requests of other employees.

127. Defendant responded to Plaintiff's protected activity by placing her on an unpaid leave of absence.

128. Unpaid leave of absence is an adverse employment action intended to force employees to forgo their religious beliefs.

129. Defendant retaliated against Plaintiff by placing her on involuntary unpaid leave, with benefits soon being stripped away, and then formally terminating her on October 3, 2021.

130. Plaintiff's religious beliefs and protected activity were the causes of Defendant's adverse employment action.

131. By retaliating against Plaintiff for engaging in protected activity, Defendant has violated Title VII.

132. This violation has harmed and continues to harm Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a.    Declare that Defendant has violated Title VII by failing to engage in the interactive process in response to requests for accommodation to its COVID-19 vaccine mandate.

b.    Declare that Defendant has violated Title VII by discriminating against Plaintiff by failing to provide reasonable accommodations to its COVID-19 vaccine mandate.

c.    Declare that Defendant has violated Title VII by retaliating against Plaintiff for engaging in protected activity.

d.    Award Plaintiff damages, including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

e.    Award Plaintiff reasonable attorneys' fees and costs.

f.      Grant any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
*noah@hurwitzlaw.com*

Dated: April 4, 2022

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LISA ALLEN,

               Plaintiff,                            Case No.

v.                                             Hon.

HENRY FORD HEALTH SYSTEM,

               Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, Michigan 48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com
Kara@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiff, Lisa Allen, by and through her attorneys, Hurwitz Law PLLC,

hereby demands a trial by jury in the above-captioned matter for all issues triable.

                                                 Respectfully Submitted,
                                                 HURWITZ LAW PLLC

                                                 */s/  Noah S. Hurwitz*
                                                 Noah S. Hurwitz (P74063)
                                               *Attorney for Plaintiff*

Dated April 4, 2022